## No. 16,664.

MARTIN ET AL. *v.* BOYLE.
(237 P. [2d] 110)

Decided September 24, 1951.  Rehearing denied October 29, 1951.

Mr. JOHN STUMP WITCHER, for plaintiffs in error.

290

Mr. JOHN M. BOYLE, pro se.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFFS in error will be referred to as petitioners.

On December 14, 1949, under the provisions of chapter 238 of the Session Laws of 1947, more than one hundred taxpaying electors of a rural district in Chaffee county, Colorado, filed their petition in the district court for an order and decree establishing the district described in the petition to be a fire protection district as provided in said statute. On January 16, 1950, after notice given as provided, the court, at a hearing on the petition, found the petition to be regular in all respects and in conformity with the statute for that purpose made and provided; further found that no objections to the formation of the district or petitions asking for the exclusion of property therefrom had been filed in the proceeding; found that the matter of the organization of the district in the territory described should be submitted to the taxpaying electors as per statute hereinbefore mentioned and on such findings ordered an election to be held on February 16, 1950 to determine whether the territory described in the petition should be and constitute a fire-protection district and be a body corporate; also for the election of a board of directors of the district in the event the proposition was approved by the majority at the election; and, further, named the time and place of the election, and, as provided, named three taxpaying electors to serve as judges of the election; and that notice of the time and place of said election be published.

On February 16, 1950, the date fixed by the court, the election was held and the results of the election as certified to the judge of the district court was that, one hundred fifty-two ballots were cast, two ballots were marked

"void ballots"; the record shows that the certificate attached discloses that seventy-five ballots were cast for the organization of the district and seventy-three against. (There is, apparently, a typographical error in the record.)

On March 15, 1950, John M. Boyle, an attorney, petitioned the court for leave to appear as amicus curiae, alleging that it had come to his knowledge that certain named taxpaying electors who would have voted against the proposal were denied the right to vote at the election, submitted this information to the court for its appropriate action, and requested that the persons named who had made affidavits, be given an opportunity to be heard and their qualifications determined.

The matter coming on for hearing before the court on April 14, 1950 upon the certification of the return of the election to the court, and also on the matters presented by amicus curiae, whose petition for leave to appear was then and there granted. In his petition, amicus curiae named Molchi, Vaughn, Wiley and Post as persons who, by their affidavits attached, claimed to be qualified taxpaying electors who were denied the right to vote. The testimony of Wiley is to the effect that he was denied the right to vote because he had not paid taxes on real property; he made no demand for an affidavit and no affidavit was offered to him. Post was present when Wiley presented himself for voting and generally corroborated Wiley's statement. Post admitted that he was not qualified to vote. Molchi testified that he was denied the right to vote because he was not registered, and stated he had not voted in Colorado and was away at the time of the 1948 election. Vaughn does not appear as witness.

Addie S. Merica, one of the judges of the election, testified that the judges denied the right to vote to some who were not registered; that affidavits were offered to some who tried to slap them out of their hands; that no one asked for an affidavit. She further testified that on account of having been caused trouble, the judges were

confused and permitted a family of four to vote who were not registered; that they tried to get them to sign affidavits, but they said they were going to vote whether the judges said so or not, and that the judges were so upset that they let these four persons vote. It thus appears that four people voted without any qualifications being established at all.

A study of the record convinces us that the conduction of the election was attended with much confusion and misunderstanding on the part of the judges, as well as much uncertainty on the part of some electors who presented themselves for the exercise of their right to vote. When it is apparent from the certified election returns that the electors allowed to vote were almost equally divided on the question proposed, then the irregularities noted could easily change the results of the election. Full support of the petition of amicus curiae is not seen in the record. One of the four named in said petition does not appear, and there is no confirmation or denial of his rights as asserted in the petition. Another freely admitted that he was not qualified to vote. The errors and confusion center largely around the matter of registration and what constituted a taxpaying elector.

██ The statute, chapter 238, S. L. of 1947, is a special statute enacted for the organization of water districts, sanitation districts, fire-protection districts, police-protection districts and metropolitan districts; it repeals the 1935 statutes relative thereto and amends the Session Laws of 1937. In the last analysis, it is a community project affecting the taxpaying electors therein and naturally the statute is designed to enable persons directly affected the right to assert themselves for or against their interests and is to be liberally construed to that end. As was well said by the trial court, "This procedure is the forerunner of a basis for the imposition of a tax upon property of persons living within this district * * *."

The argument of counsel centers largely around that

part of section 8, chapter 238, S. L. 1947, which is as follows: "Such election shall be held and conducted as nearly as may be in the same manner as general elections in this State. There shall be no special registration for such election but for the purpose of determining qualifications of electors, the judges shall be permitted to use the last official registry lists of electors residing in the district, and in addition, they may require the execution of an affidavit concerning the qualifications of any elector."

We believe the questions presented here to be of first impression so far as concerns an interpretation of the above quoted section of the statute. Counsel for petitioners stands squarely on the proposition that if the person proposing to vote is not on the official registry list, then such person is not entitled to vote, and he supports his contention by section 212, chapter 59, '35 C. S. A. of the general election laws, which is as follows: "No vote shall be received at any election unless the name of the person offering to vote shall be found on the said certified registry list." Counsel seems to unduly confuse the regulations concerning general elections with the special provisions of the statute here involved. In this instance, the general voting public is not involved. The Constitution provides that registration is required "to secure the purity of elections and guard against abuses of the elective franchise." *Fish v. Kugel,* 63 Colo. 101, 165 Pac. 249.

In enacting the section of the statute above quoted, and under which this controversy arises, the legislature clearly anticipated probable circumstances attending such a special election when it said, "such election shall be held and conducted *as nearly as may be* in the same manner as general elections in this State." This is an unequivocal allowance for conditions not controlled by the general election laws. What the legislature did not say is as unmistakable and important as what it did say. It did not say that only those whose names appeared on the last official registry were entitled to vote. Had such

been in the contemplation of the legislature, then it surely would not have dispensed with a special registration for the election. It did not say that in the determination of the qualifications of voters, that the judges should rely solely on the registry lists. For expediting the matter and determining such qualifications, the judges were permitted by the statute to use the last official registry list. If the registry list then available was conclusive, then the matter of affidavits as referred to in the statute is superfluous.

If a person's name is on the latest official registration list, then his qualifications as a voter at a general election are established, and if he is a taxpayer other than by the payment of automobile taxes, he is entitled to vote. If he establishes all of these qualifications and his name is not on the official registration list, he still is entitled to vote in a special election, as held here, under the statute. The qualifications may be established by affidavit of the person desiring to vote, the form of such affidavit either to be tendered by the election officials, or provided by the voter, or upon his demand.

The entire record, considered as a whole, and all of the testimony in connection therewith, clearly discloses that the conduct of the election here involved resulted in the denial of the right to vote to some qualified electors and permitted others to vote who possibly were not qualified at all. Since this could easily change the results of the election, we find no error on the part of the trial court in refusing to approve the certificate of the judges as to the result of the election and thereupon declaring said election to be void and of no effect without prejudice to the holding of another election on the same petition now on file after proper notice.

Judgment affirmed.